IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| WHITNEY MAIN, et al., | § | |
| | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:16-CV-00473-O |
| | § | |
| AMERICAN AIRLINES INC., et al., | § | |
| | § | |
|    Defendants. | § | |

## ORDER

Before the Court is Defendants American Airlines Inc., the Pension Asset Administration Committee, the Benefits Strategy Committee, the Pension Benefits Administration Committee, and the Employee Benefits Committee's Motion to Dismiss (ECF No. 37). The Motion has been fully briefed and is ripe for review. Having considered the pleadings, briefing, and applicable law, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

**I.     Background**

The following background information is largely taken from Plaintiffs' Second Amended Complaint (ECF No. 57).[1] Plaintiffs bring this putative class-action suit under the Employee Retirement Income Security Act of 1974 ("ERISA"). 2d Am. Compl. 1, ECF No. 57. Plaintiffs assert this claim individually and on behalf of the American Airlines, Inc. 401(k) Plan (formerly known as $uper $aver, a 401(k) Capital Accumulation Plan for Employees of Participating AMR Corporation Subsidiaries) (the "Plan"). Plaintiffs allege that Defendants violated their fiduciary duties of loyalty and prudence imposed by ERISA. *See* 29 U.S.C. § 1104(a)(1).

---

[1] Although the Second Amended Complaint was filed after Defendants' Motion to Dismiss, the parties agree that the Court may consider the Motion without further briefing. *See* Corrected Stipulation Regarding Filing of Second Amended Complaint, ECF No. 56.

- 1 -

The Plan is an "employee pension benefit plan" as defined by 29 U.S.C. § 1002(2)(A) and is a "defined contribution plan" as defined by 29 U.S.C. § 1002(34). This type of defined-contribution plan allows employees to invest a percentage of their earnings on a pre-tax basis, with the employer often matching a certain percentage of those contributions.

Plaintiffs allege that American Airlines is a "plan sponsor" as defined by 29 U.S.C. § 1002(16)(B) and that American Airlines is a subsidiary of Airlines Group, Inc., formerly known as AMR Corp. Plaintiffs also allege that American Airlines was a named fiduciary under 29 U.S.C. § 1102(a). Plaintiffs further allege that the Pension Asset Administration Committee ("PAAC") was named fiduciary under 29 U.S.C. § 1102(a) during much of the relevant time period. Plaintiffs next allege that the Benefits Strategy Committee ("BSC") was a fiduciary under 29 U.S.C. § 1002(21)(A) because it was "responsible for approving material amendments to the Plan, and appointing the members of the PAAC and PBAC." Second Amended Compl. ¶ 25, ECF No. 57. Plaintiffs allege that the Pension Benefit Administration Committee ("PBAC") is a fiduciary under 29 U.S.C. § 1002(21)(A) because it was responsible for the "general operation of the Plan and for the selection of administrative service providers." *Id.* ¶ 26. Plaintiffs also allege that the Employee Benefits Committee ("EBC") is a named fiduciary under 29 U.S.C. § 1102(a) and a fiduciary under 29 U.S.C. § 1002(21)(A). Lastly, Plaintiffs allege that American Beacon is an "investment manager" of the Plan as defined by 29 U.S.C. § 1002(38) and a functional fiduciary under 29 U.S.C. § 1002(21)(A).

Plaintiffs contend that American Airlines had authority to appoint the Plan's fiduciaries. American Airlines' CEO appointed the members of the BSC, who would then appoint the PAAC and the PBAC. According to the Second Amended Complaint, American Airlines had the authority

to modify the Plan's management structure at all times. Under this authority, American Airlines amended the Plan to give control to the EBC.

The core of Plaintiffs' claims relate to the use of American Beacon Funds in the Plan. AMR Corp., American Airlines' parent company, created a line of mutual funds that were managed by another subsidiary of AMR Corp. This fund manager was later renamed American Beacon Advisors, Inc. in 2005. These mutual funds were then known as American Beacon Funds.

AMR Corp. sold American Beacon Advisors, Inc. in 2008 to Lighthouse Holdings, Inc. As a part of this deal, AMR Corp. received an equity stake in Lighthouse Holdings, Inc. Plaintiffs contend that this sale was premised on American Airlines continued use of American Beacon Funds in the Plan. Although American Airlines employed an independent third party to approve the continued use of American Beacon Funds in the Plan, Plaintiffs allege that this was done merely to "whitewash" American Airlines' actions.

Plaintiffs claim that Defendants breached their fiduciary duties because a prudent fiduciary would not retain the American Beacon Funds because (1) American Beacon Funds were more expensive than similar alternatives; (2) American Beacon Funds underperformed compared to other similar investments; and (3) American Beacon Funds were not included in other 401(k) plans. Plaintiffs also allege that Defendants breached their duty of loyalty by not removing the overly expensive and underperforming American Beacon Funds.

In 2015, Lighthouse Holdings, Inc. sold its interest in American Beacon Advisors, Inc. According to Plaintiffs, this eliminated any financial interest American Airlines had in the Plan's use of American Beacon Funds. Then, later in 2015, the Plan's fiduciaries removed the American Beacon Funds. And shortly thereafter, the American Beacon Funds ceased to exist because, according to Plaintiffs, they were marketplace failures that prudent investors would not choose.

Plaintiffs also bring a claim for failure to monitor fiduciaries against American Airlines and the BSC. According to the Plaintiffs, American Airlines and the BSC were responsible for appointing members of the PBAC, the PAAC, and the EBC, and thus had a duty to monitor the performance of those fiduciaries.

Defendants American Airlines Inc., the Pension Asset Administration Committee, the Benefits Strategy Committee, the Pension Benefits Administration Committee, and the Employee Benefits Committee now bring this Motion, seeking to have all of Plaintiffs' claims dismissed.

## II.   Legal Standard

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

### III. Plaintiffs' Motion to Strike

Defendants request that the Court take judicial notice of Exhibits A–AA. *See* Defs.' App., ECF No. 39. Plaintiffs move to strike Exhibits D, E, and I through AA. The Fifth Circuit has said that a court may consider:

> documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim. We may also consider the contents of relevant public disclosure documents which (1) are required to be filed with the SEC, and (2) are actually filed with the SEC. Such documents should be considered only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents.

*Kopp v. Klein*, 722 F.3d 327, 333 (5th Cir. 2013) (internal citations and quotations omitted). Accordingly, the Court declines to strike the contested exhibits, and will consider them to determine what statements are contained within those documents. Of course, at this stage of the proceedings all facts will be viewed in a light most favorably to the plaintiff.

## IV.    Analysis

Plaintiffs contend that Defendants breached their fiduciary duties. Under ERISA, fiduciaries have both a duty of loyalty and a duty of prudence. *Kujanek v. Houston Poly Bag I, Ltd.*, 658 F.3d 483, 487 (5th Cir. 2011).

### A.    Defendants' Arguments for Dismissal of Claims Based on Duty of Loyalty

"ERISA's duty of loyalty is 'the highest known to the law.'" *Brussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)). "[T]he common law of trusts . . . informs our interpretation of ERISA's fiduciary duties." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 n.4 (2008). The common law of trusts requires the "trustee to administer the trust solely in the interest of the beneficiaries." *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000) (quoting 2A A. Scott & W. Fracther, Trusts § 170, p. 311 (4th ed. 1987)). Under ERISA, the fiduciaries' "decisions must be made with an eye single to the interests of the participants and beneficiaries." *Donovan*, 680 F.2d at 271.

Defendants argue that Plaintiffs have failed to set forth a valid theory of disloyalty because (1) an independent third party reviewed and approved the continued use of American Beacon Funds after American Beacon Advisors was sold to Lighthouse Holdings, Inc.; (2) Department of Labor regulations allow plan investments managed by the plan sponsor itself; and (3) the Plan did not include all American Beacon Funds and, in fact, not all American Beacon Funds were sold after Lighthouse Holdings, Inc. sold American Beacon Advisors. *See* Defs.' Br. 5–9, ECF No. 38.

Defendants argue that the use of an independent third party fiduciary establishes that they faithfully conducted themselves. *Id.* at 5. Plaintiff's Second Amended Complaint, however, alleges in a conclusory manner that the independent party "did not render a truly independent opinion, and was hired with an implicit understanding that its role was to make the agreement look legitimate." 2d Am. Compl. 30 n.3, ECF No. 57. A conclusory statement does not allege facts that would defeat a 12(b)(6) motion.

Plaintiffs do factually allege that the independent fiduciary was not involved after the sale of American Beacon Advisors to Lighthouse Holdings, Inc., and so, even if the independent third party did conduct a faithful assessment, Plaintiffs' allegations that Defendants continued to retain American Beacon Funds after the sale was complete cannot be mitigated by the use of an independent fiduciary at the time of American Beacon Advisor's sale. In other words, Plaintiffs argue Defendants would have breached their duty of loyalty by retaining American Beacon Funds after the American Beacon Advisors sale was complete and after the independent fiduciary ceased to be involved. *See* Pls.' Br. 12, ECF No. 44. To say at this stage in the litigation that engaging a third party fiduciary establishes that Defendants acted loyally during the entire period of time that Plaintiffs complain of would require the Court to draw an impermissible inference against Plaintiffs. Accordingly, the Court does not find that dismissal is warranted on this basis at this time.

Next, Defendants argue that, because a plan is permitted to invest in options that the plan's sponsors have a connection to, it makes no sense to infer disloyalty when plans do so. Defs.' Br. 7, ECF No. 38. While it is true that federal regulations allow such investments, *see* 42 Fed. Reg. 18734, 18735 (Apr. 8, 1977), this exemption only applies to claims under 29 U.S.C. § 1108(a). And although federal regulations allow these exemptions, it does not relieve Defendants of their

fiduciary duties. *See* 42 Fed. Reg. 18,734 (1977). Defendants argue, though, that because these practices are allowed it is illogical to infer disloyalty from them. But that is not the whole of Plaintiffs' allegations. Plaintiffs allege not only that Defendants chose affiliated investment options but also that those investment options either charged higher fees than similar options or that those options were underperforming and that Defendants failed to investigate the availability of cheaper alternatives. Taking these allegations as a whole, Plaintiffs have plausibly alleged that Defendants were not acting with an "eye single to the interests of the participants and beneficiaries." *Donovan*, 680 F.2d at 271. Accordingly, the Court does not believe dismissal on this basis is warranted at this stage. *See Urakhchin v. Allianz Asset Management of America, LP*, 2016 WL 4508117, at *7 (C.D. Cal. Aug. 5, 2016) (reaching similar conclusion).

Lastly, Defendants argue that American Beacon Funds were included in the Plan on their merits, and they also offer an alternative explanation for why the Plan dropped the American Beacon Funds after Lighthouse Holdings, Inc. sold American Beacon Advisors. Agreeing with Defendants would require the Court to draw inferences against Plaintiffs which is not permitted at this stage. Accordingly, the Court does not believe dismissal is warranted on this basis.

### B. Defendants' Arguments for Dismissal of Claims Based on Duty of Prudence

Defendants argue that none of Plaintiffs' three imprudence theories can support a valid claim. ERISA requires that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "[U]nder trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015). The prudence standard normally focuses on the fiduciary's conduct in making

investments decisions, and not on the results. *Pension Benefits Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013). But when the alleged facts do not 'directly address[ ] the process by which the Plan was managed,' a claim alleging a breach of fiduciary duty may still survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably 'infer from what is alleged that the process was flawed.'" *Id.* at 718 (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)). To survive a motion to dismiss, a plaintiff may "allege facts sufficient to raise a plausible inference that . . . a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative." *Id.* at 719.

First, Plaintiffs allege that Defendants were imprudent by including American Beacon index funds that were more expensive than nearly identical index fund alternatives. For example, Plaintiffs allege that the Plan included American Beacon S&P 500 Index Fund, which charged fees seven times higher than an identical Vanguard fund.[2] Defendants argue that they had no duty to seek out the cheapest possible index funds. Defendants cite *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) and *Braden* for this proposition. But in applying *Braden*, courts have denied motions to dismiss where plaintiffs alleged that the defendants failed to consider lower cost funds with identical styles and stocks. *See*, *e.g.*, *Kruger v. Novant Health, Inc.*, 131 F. Supp. 3d 470, 476 (M.D.N.C. Sept. 17, 2015). Thus, the Court, while drawing all reasonable inferences in favor of Plaintiffs, concludes Plaintiffs have plausibly stated a claim. Accordingly, dismissal is not warranted.

---

[2] Defendants argue that Vanguard funds were not available to the Plan. Plaintiffs disagree with that assertion. For the Court to agree with Defendants would require the Court to rely on materials not appropriate at this stage in the litigation. For the purposes of this motion, the Court accepts as true Plaintiffs' allegations that the Plan could have invested in Vanguard funds.

Second, Plaintiffs allege that Defendants were imprudent by retaining poor-performing actively managed funds, specifically the American Beacon Short-Term Bond Fund, the American Beacon Large-Cap Growth Fund, and the American Beacon Treasury Inflation Protected Securities Fund. Defendants rely on a number of materials outside the pleadings to argue why the inclusion of these three funds was not imprudent. And while the Court may take judicial notice of those materials, it may not rely on the parties' opinion about what the proper inferences should be drawn from them. "Rule 8 does not require a plaintiff to plead facts tending to rebut all possible lawful explanations for a defendant's conduct." *Braden*, 588 F.3d at 596. Accordingly, the Court finds that dismissal is not warranted at this time.

Next, Plaintiffs argue that "Defendants breached their duty of prudence by failing to consider low-cost separate accounts and collective trusts as alternatives to mutual funds." Pls.' Br. 21, ECF No. 44. Defendants argue that it is not imprudent to offer mutual funds, instead of separate accounts or collective trusts, in the Plan. Defs.' Br. 21, ECF No. 38. The Seventh Circuit has held that offering mutual funds instead of other lower cost alternatives is not imprudent. *See generally Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011). While it does not appear the Fifth Circuit has addressed this question, the Court agrees with the reasoning of the Seventh Circuit. Defendants have not breached their duty of prudence by offering mutual funds and failing to consider alternatives. Accordingly, Defendants' Motion is granted to the extent that Count I relies on the argument that Defendants breached their duty of prudence by not considering alternatives to mutual funds.

### C. Defendants' Argument for Dismissal for Failure to Allege Fiduciary Status

Defendants argue that Count I should at least be dismissed as to American Airlines, the PBAC, and the BSC because under ERISA a person is only a fiduciary "to the extent" that he or she was performing a fiduciary function.

> In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Defendants argue that Plaintiffs have failed to allege sufficient facts to hold American Airlines, the PBAC, and the BSC liable as fiduciaries. "It is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings." *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004). "A person or entity that has the power to appoint, retain and/or remove a plan fiduciary from his position has discretionary authority or control over the management or administration of a plan and is a fiduciary to the extent that he or it exercises that power." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 552 (S.D. Tex. 2003). Plaintiffs have alleged that these defendants were either named fiduciaries or had control over management of the Plan. Accordingly, the Court finds that is dismissal is not appropriate at this stage.

### D.    Defendants' Arguments to Dismiss Failure to Monitor Claim

Defendants also move to dismiss Count II. They argue that the Fifth Circuit has never recognized a duty to monitor claim, and even if such claim exists, Plaintiffs have failed to allege sufficient facts to support the claim. In a footnote, the Fifth Circuit stated that it had never recognized a duty to monitor claim. *Perez v. Bruister*, 823 F.3d 250, 260 n.10 (5th Cir. 2016). Even so, other circuits have recognized the claim. *See e.g.*, *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1466 n.10 (4th Cir. 1996); *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011).

And, Plaintiffs have adequately alleged sufficient facts to support a duty to monitor claim against American Airlines and the BSC. Plaintiffs allege that these two defendants breached their fiduciary duties by:

> (a) Failing to monitor and evaluate the performance of the Plan's fiduciaries or have a system in place for doing so, standing idly by as the Plan suffered enormous losses as a result of the other Defendants' imprudent actions and omissions;
>
> (b) failing to monitor the processes by which Plan investments were evaluated, which would have alerted a prudent fiduciary to the preferential treatment the Plan's fiduciaries were giving to American Beacon-affiliated mutual funds in their process of selecting and monitoring the Plan's investments; the fiduciaries' failure to investigate the availability of lower-cost separate account and collective trust vehicles; and the failure to investigate in a timely fashion the availability of lower-cost alternatives to the American Beacon index funds held by the Plan;
>
> (c) failing to remove fiduciaries whose performance was inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing investments within the Plan, all to the detriment of the Plan and Plan participants' retirement savings.

2d Am. Compl. 60–61, ECF No. 57. This sufficiently alleges a claim. *See Urakhchin*, 2016 WL 4507117, at *7 (declining to dismiss failure to monitor claims based on similar allegations). Accordingly, Defendants' Motion is denied as to this claim.[3]

## V.   Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED** to the extent that Count I relies on the claim that Defendants were imprudent for not considering low-cost alternatives to mutual funds, and the Motion is **DENIED** as to the other claims.

**SO ORDERED** on this **31st day of March, 2017.**

_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

---

[3] The parties should submit briefing on whether this claim is cognizable in the Fifth Circuit.