**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| Whitney Main, Henry Schmidt, and Daniel Grentz, individually and as representatives of a class of similarly situated persons, and on behalf of the American Airlines, Inc., 401(k) Plan,<br><br>               Plaintiffs,<br><br>v.<br><br>American Airlines, Inc., American Beacon Advisors, Inc., Pension Asset Administration Committee, Benefits Strategy Committee, Pension Benefits Administration Committee, and Employee Benefits Committee,<br><br>               Defendants. | Case No. 4:16-cv-00473-O |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

Joe Kendall, Texas Bar No. 11260700
Jody Rudman, Texas Bar No. 00797356
KENDALL LAW GROUP, PLLC
3232 McKinney Avenue, Suite 700
Dallas, Texas 75204
Tel.: 214-744-3000
Fax: 214-744-3015
jkendall@kendalllawgroup.com
jrudman@kendalllawgroup.com

Kai H. Richter, MN Bar No. 0296545*
Carl F. Engstrom, MN Bar No. 0396298*
Paul J. Lukas, MN Bar No. 22084X*
Brandon T. McDonough, MN Bar No. 0393259*
Brock J. Specht, MN Bar. No. 0388343*
   *admitted *pro hac vice*
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
Tel.: 612-256-3200
Fax.: 612-338-4878
krichter@nka.com
cengstrom@nka.com
plukas@nka.com
bmcdonough@nka.com
bspecht@nka.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

I.    PROCEDURAL HISTORY ............................................................................................. 3

      A.    Pleadings .......................................................................................................... 3

      B.    Defendants' Motions to Dismiss ..................................................................... 5

      C.    Discovery ......................................................................................................... 6

      D.    Plaintiffs' Motion for Leave to Amend ........................................................... 7

      E.    Plaintiffs' Motion for Class Certification ...................................................... 8

      F.    Mediation & Settlement .................................................................................. 8

II.    OVERVIEW OF THE SETTLEMENT TERMS ................................................................. 9

      A.    Proposed Settlement Class .............................................................................. 9

      B.    Monetary Relief ............................................................................................ 10

      C.    Prospective Relief ........................................................................................ 11

      D.    Review by Independent Fiduciary ................................................................ 11

      E.    Release of Claims ......................................................................................... 12

      F.    Class Notice and Settlement Administration ............................................... 12

      G.    Attorneys' Fees and Expenses ..................................................................... 13

ARGUMENT ..................................................................................................................... 14

I.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT .. 15

      A.    The Settlement Was Obtained Through Arm's-Length Negotiations ............ 15

      B.    The Litigation Was Complex, and Would Have Been Costly and Lengthy ......... 16

      C.    The Parties Obtained Sufficient Discovery to Negotiate the Settlement ......... 17

D.      The Settlement Class Faced Risks on the Merits ................................................ 17

E.      The Monetary Relief Compares Well to Potential Damages and Other

Settlements ........................................................................................................ 18

F.      The Class Representatives and Class Counsel Believe the Settlement Is Fair ...... 20

II.     THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED ........................... 21

III.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ................. 22

A.      The Proposed Settlement Class Satisfies Rule 23(a) ........................................... 22

B.      The Proposed Class Satisfies Rule 23(b)(1) ....................................................... 24

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*In re 2014 Radioshack Erisa Litig.*,

     No. 4:14-CV-00959-O, 2016 WL 6561597 (N.D. Tex. Jan. 25, 2016) ................ 21, 24, 25

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997) ................................ 22, 24

*Ayers v. Thompson*, 358 F.3d 356 (5th Cir. 2004) ................................................................... 16, 17

*Billitteri v. Sec. Am., Inc.*,

     No. 3:09-CV-01568-F, 2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ................ 15, 16, 17

*Brotherston v. Putnam Invs., LLC*, 1:15-cv-13825, Dkt. No. 202 (D. Mass.) ............................ 18

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...................... 20

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ................................................. 14, 16, 17, 18, 19

*In re Deepwater Horizon*, 732 F.3d 326 (5th Cir. 2013) ............................................................. 10

*DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D. Va. 2006) ........................................... 23, 24

*In re Enron Corp.*,

     No. CIV.A. H-01-3913, 2006 WL 1662596 (S.D. Tex. June 7, 2006) ................... 23, 24

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ................................................................... 23

*In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ............................ 22

*Glover v. Woodbolt Distribution, Ltd.*,

     No. CIV.A.H-12-2191, 2012 WL 5456361 (S.D. Tex. Nov. 7, 2012) .......................... 14

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009) .................................................................. 19

*Horton v. Metropolitan Life Ins. Co.*,

     1994 U.S. Dist. LEXIS 21395 (M.D. Fla. Oct. 25, 1994) ............................................. 22

*Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. 2010) ..................................................... 18

*Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559 (D. Minn. 2014) ...................................... 23, 24

iii

*Maher v. Zapata Corp.*, 714 F.2d 436 (5th Cir. 1983) .................................................... 15

*McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234 (5th Cir. 1995) ..................... 18

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) ...................................................... 16

*Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426 (5th Cir. 1977) ............................. 21

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) .......................... 22

*In re Newbridge Networks Sec. Litig.*,

      No. CIV.A. 94-1678-LFO, 1998 WL 765724 (D.D.C. Oct. 23, 1998) ................... 20

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004) ............................................... 14, 17

*In re OCA, Inc. Securities and Derivative Litig.*,

      No. CIV A 05-2165, 2008 WL 4681369 (E.D. La. Oct. 17, 2008) ....................... 15

*Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978) ..................... 20

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) .................................................. 21

*Purdie v. Ace Cash Express, Inc.*,

      No. CIV.A. 301CV1754L, 2003 WL 22976611 (N.D. Tex. Dec. 11, 2003) ..... 14, 15, 20

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) .............................. 15, 16, 18, 20

*In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706 (E.D. Pa. 2001) ......................... 20

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585 (3d Cir. 2009) ....................... 25

*Stott v. Capital Fin. Services, Inc.*, 277 F.R.D. 316 (N.D. Tex. 2011) ...................... 20, 23

*Tibble v. Edison Int'l*, 843 F.3d 1187 (9th Cir. 2016) ................................................... 16

*Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007) ........................ 17

*Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) ....................................................... 19

*Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) .................................................. 16, 19

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,

    No. 815CV1614JLSJCGX, 2017 WL 2655678 (C.D. Cal. June 15, 2017) ............ 23

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ............ 22

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993) ............ 22

*In re WorldCom, Inc. ERISA Litig.*,

    No. 02 CIV. 4816 (DLC), 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ............ 16

**Rules and Statutes**

Fed. R. Civ. P. 23 *et. seq.* ............ 21, 22, 24, 25

**Other Authority**

Manual for Complex Litigation (Fourth) § 21.632 (2004) ............ 14

Prohibited Transaction Exemption 2003-39,

    68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ............ 11

## INTRODUCTION

Plaintiffs Whitney Main, Henry Schmidt, and Daniel Grentz submit this Memorandum in support of their Motion for Preliminary Approval of their Class Action Settlement Agreement with Defendants American Airlines, Inc. ("American Airlines"), the Pension Asset Administration Committee, Benefits Strategy Committee, Pension Benefits Administration Committee, and Employee Benefits Committee (collectively with American Airlines, the "American Airlines Defendants") and American Beacon Advisors, Inc. ("American Beacon") (collectively with the American Airlines Defendants, "Defendants"). A copy of the Parties' Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") is attached as Exhibit 1 to the accompanying Declaration of Kai Richter ("*Richter Decl.*").[1] This Settlement resolves Plaintiffs' putative class action claims against Defendants under the Employee Retirement Income Security Act ("ERISA") regarding the American Airlines, Inc. 401(k) Plan (the "Plan").[2]

Under the terms of the proposed Settlement, Defendants will pay a gross settlement amount of $22,000,000 into a common fund for the benefit of Class Members.  This is a fair and reasonable recovery for the Settlement Class in comparison to the potential recovery by the Plan, and the attendant risks of litigation. Moreover, the issues in this case with respect to management of the Plan have been resolved, as the Plan eliminated the alleged defects when the Plan was overhauled in October 2015.

For the reasons set forth below, the Settlement is fair, reasonable, and adequate, and merits preliminary approval so that the proposed Settlement Notices can be sent to the Settlement Class. Among other things:

---

[1] All capitalized terms have the meaning assigned to them in Article 2 of the accompanying Settlement Agreement, unless otherwise specified herein.

[2] The Plan was formerly known as $uper $aver, a 401(k) Capital Accumulation Plan for Employees of Participating AMR Corporation Subsidiaries.

- The Settlement was negotiated at arm's-length by experienced counsel, with the assistance of a well-respected mediator, Martin F. Scheinman;

- The Settlement provides for significant monetary relief;

- The Settlement provides for automatic distribution of the settlement funds to the accounts of Class Members who are Current Participants in the Plan, and for a simple claim form to be submitted by Former Participants in the Plan, which allows Former Participants to elect either to roll their distribution into another qualified retirement account or to receive a cash distribution;

- The Class Release in the Settlement Agreement is narrowly tailored to apply only to claims like those asserted in this lawsuit;

- American Beacon is no longer the Plan's investment advisor, and the American Beacon Funds are no longer investment options in the Plan;

- After October 2015, the Plan's investment options have included separate accounts and collective trusts;

- The proposed Settlement Notices provide fulsome information to Class Members about the Settlement, and will be distributed via first-class mail; and

- The Settlement Agreement provides Class Members the opportunity to raise any objections they may have to the Settlement and appear at the final approval hearing.

Accordingly, Plaintiffs respectfully request that this Court enter an order: (1) preliminarily approving the parties' Class Action Settlement Agreement (which is attached as Exhibit 1 to the accompanying Declaration of Kai Richter); (2) approving the proposed Settlement Notices and authorizing distribution of the Notices; (3) certifying the proposed Settlement Class; (4) designating Plaintiffs as Class Representatives; (5) designating Plaintiffs' counsel as Class Counsel; (6) scheduling a final approval hearing; and (7) granting such other relief as set forth in Plaintiffs' proposed Preliminary Approval Order submitted herewith (which is also attached as an exhibit to the Settlement Agreement). This motion is not opposed by Defendants as parties to the Settlement.

## BACKGROUND

### I.   PROCEDURAL HISTORY

#### A.   Pleadings

Plaintiffs initiated this action by filing their Class Action Complaint ("Complaint") on April 15, 2016, on behalf of themselves and the Plan, as well as on behalf of participants and beneficiaries of the Plan during the relevant timeframe. *ECF No. 1*. The Complaint alleged that the American Airlines Defendants breached their fiduciary duties of loyalty and prudence by including and retaining American Beacon mutual funds as investment options in the Plan, when superior alternative investments were available from other fund managers not affiliated with American Airlines. *Id. ¶¶ 4-7*. Namely, Plaintiffs alleged that American Airlines had a financial interest in American Beacon, and that the American Airlines Defendants favored American Beacon Funds as investment options to the detriment of the Plan and its participants. *Id. ¶¶ 3, 10*. Plaintiffs also alleged that the American Airlines Defendants breached their duty of prudence by failing to consider investment vehicles other than mutual funds, like separate accounts or collective trusts. *Id. ¶ 9*. These alternative investments typically have lower costs. *Id.*

Plaintiffs filed their First Amended Complaint on July 1, 2016, alleging these same claims and additional supporting facts. *ECF No. 34*. By stipulation of the parties, Plaintiffs filed their operative Second Amended Complaint on November 16, 2016. *ECF Nos. 56, 56-1, 57*. In their Second Amended Complaint, Plaintiffs allege that American Beacon was the Plan's fiduciary investment advisor during the relevant time.[3] *ECF No. 57, ¶¶ 83, 90*. Plaintiffs allege

---

[3] In the Second Amended Complaint, Plaintiffs also named certain individuals, identified in the Complaint and First Amended Complaint as John Does, alleged to be responsible for management of Plan through their positions on the Pension Asset Administration Committee, Benefits Strategy Committee, Pension Benefits Administration Committee, or Employee Benefits Committee. *See Id. ¶¶ 28-48* (identifying committee members by name). By stipulation

that American Beacon is liable, along with the American Airlines Defendants, for improperly favoring the American Beacon Funds as investment options in the Plan, and for failing to consider alternatives to mutual funds. *Id. ¶¶ 10, 50, 83, 90-93, 133-34*.

Defendants retained thirteen of the fourteen American Beacon Funds in the Plan until the second half of 2015.[4] *Id. ¶¶ 84-85, 88-89*. The American Airlines Defendants only removed the American Beacon Funds from the Plan after American Airlines' parent fully divested from American Beacon in 2015. *Id. ¶¶ 86-88*. Shortly after the final sale of American Airlines' parent's equity interest in American Beacon, the American Airlines Defendants overhauled the Plan's investment lineup. *Id. ¶ 88*. The new lineup replaced the American Beacon Funds with lower-cost options.[5]

Plaintiffs allege that the Plan and its participants would have realized tens of millions of dollars more in investment returns, net of fees, between 2010 and 2015 had Defendants replaced the American Beacon Funds with prudent alternatives available in the marketplace in 2010. *Id. ¶ 8*. Plaintiffs also allege that the Plan could have obtained additional savings during this time by utilizing investment vehicles with lower expenses than mutual funds, like separate accounts or collective trusts. *Id. ¶¶ 84-85, 127-35*.

---

of the parties, these individual committee members were dismissed from the action, and the American Airlines Defendants agreed to be responsible for any monetary judgment based on the actions or omissions of individual committee members. *ECF No. 72, ¶¶ 1-2*. In the Settlement Agreement, individual committee members will be released, together with Defendants, in consideration of the benefits provided by the Settlement. *See Settlement Agreement, ¶¶ 2.44, 8.1, PL-PA-APP. 26, 41*.

[4] The one American Beacon Fund that was removed from the Plan during this time, the Large Cap Growth Fund, was liquidated. *Id. ¶¶ 7, 118 & n.4*.

[5] American Beacon was retained as an investment manager in three select investment strategies in the new investment lineup after October 2015. *Id. ¶ 88*. However, each new option was structured and monitored differently than the American Beacon Funds, reducing American Beacon's role in the few positions where American Beacon was not completely eliminated from the Plan. *Id.*

### B.      Defendants' Motions to Dismiss

The American Airlines Defendants moved to dismiss Plaintiffs' claims on August 5, 2016, arguing that Plaintiffs failed to state claim for relief. *See ECF No. 38.*[6] American Beacon separately moved to dismiss for failure to state a claim on January 18, 2017, and also raised a statute of limitations defense. *See ECF No. 75.*

In their motions to dismiss, Defendants argued that American Beacon's fees and performance results were competitive with the market, and that the American Beacon Funds had earned several distinctions. *See ECF No. 38, at 14-19, nn. 16-30; ECF No. 75, at 5-6.* Defendants further argued that the retention of American Beacon and American Beacon Funds was approved by an independent fiduciary, and that no obstacles impeded their fiduciary duties. *ECF No. 38, at 7, n.7; ECF No. 75, at 4.* American Airlines also identified alternative motivating factors for the Plan's investment lineup overhaul in 2015 (other than, as Plaintiffs alleged, American Airlines' parent's divestment from American Beacon); namely, Defendants argued the lineup change was related to American Airlines' merger with U.S. Airways and the corresponding expansion of the Plan. *ECF No. 38, at 3, 9, n.15.* As a matter of law, Defendants argued that ERISA's fiduciary standards did not require Defendants to take the actions that Plaintiffs allege a prudent, impartial fiduciary would have taken. *ECF No. 38, at 3, 9, n. 15; ECF No. 75, at 16-24.* American Beacon additionally argued that Plaintiffs' claims were barred by ERISA's statute of limitations. *ECF No. 75, at 9-11.*

On March 31, 2017, the Court issued an Order on the American Airlines Defendants' motion to dismiss. *ECF No. 100.* The Court found that Plaintiffs had stated a claim for breach of

---

[6] At the time that Plaintiffs filed their Second Amended Complaint, the parties stipulated that Plaintiffs' Second Amended Complaint did not materially change Plaintiffs' allegations against the American Airlines Defendants, and therefore agreed that the American Airlines Defendants' motion to dismiss could be resolved without further briefing. *ECF No. 56.*

the duty of loyalty based on the totality of facts and circumstances alleged related to the American Airlines Defendants' retention of the American Beacon Funds. *Id. at 8*. The Court further found that Plaintiffs had stated a claim for breach of the duty of prudence based on the same facts and circumstances related to American Beacon Funds. *Id. at 9-10*. The Court ruled, however, that Plaintiffs had not stated a plausible claim for relief based on their allegations that Defendants were imprudent by failing to consider investment vehicles other than mutual funds. *Id. at 10*.  Following the Court's Order, the American Airlines Defendants filed their Answer to the Second Amend Complaint denying that Plaintiffs, the Plan, or its participants are entitled to any relief, and asserting numerous affirmative defenses. *ECF No. 120, at 46-51*. As of the time of the Settlement, the Court had not yet ruled on American Beacon's motion to dismiss.

### C.      Discovery

While the motions to dismiss were pending, the parties conducted extensive discovery. *See Richter Decl.  ¶¶ 13-16, PL-PA-APP. 5-7*. On August 19, 2016 (two weeks after the American Airlines Defendants filed their motion to dismiss), Plaintiffs served the American Airlines Defendants with written discovery. *Id. ¶ 14, PL-PA-APP. 5*. In response, the American Airlines Defendants provided 93,603 pages of documents to Plaintiffs in a series of document productions between October 10, 2016 and March 10, 2017. *Id. ¶¶14-15, PL-PA-APP. 5-7*. Plaintiffs also served a subpoena for documents on Gallagher Fiduciary Advisors, LLC, the successor firm to the independent fiduciary identified in Defendants' motion papers (Independent Fiduciary Services, Inc.). *Id.* Plaintiffs obtained and reviewed 4,836 pages of documents from the independent fiduciary, as well as an additional set of records from the independent fiduciary's outside law firm (Reed Smith LLP). *Id.* After American Beacon was added as a Defendant, Plaintiffs promptly served American Beacon with written discovery

6

requests, and American Beacon provided 17,269 pages of responsive documents through April 19, 2017. *Id.* Defendants also served written discovery requests on Plaintiffs, and Plaintiffs produced 2,383 pages of records to Defendants through April 2017. *Id.*

After exchanging substantial written discovery, the Parties proceeded with depositions of several witnesses. *Id. ¶ 16, PL-PA-APP. 7.* Plaintiffs took six depositions between February 22, 2017 and March 10, 2017: four from American Airlines employees, one from an American Beacon employee during the relevant time, and one from the principal of the independent fiduciary firm utilized by Defendants in 2008. *Id.* Defendants likewise took depositions of each of the Plaintiffs between March 6, 2017 and March 21, 2017. *Id.*

Had the parties not reached the Settlement, additional discovery was anticipated. *Id. ¶ 17, PL-PA-APP. 8.* Plaintiffs had noticed depositions of eight additional persons with knowledge of the Plan's investments or the management of the Plan during the relevant time. *Id.* Plaintiffs also had outstanding supplemental written discovery requests to Defendants. *Id.* Finally, expert discovery was imminent. *Id.* The parties had engaged a total of eight experts—four on each side—to provide initial reports and to testify in depositions and at trial, if necessary. *Id.*

### D.     Plaintiffs' Motion for Leave to Amend

Based on the discovery obtained in the case, Plaintiffs moved for leave to amend to assert additional claims against Defendants on March 31, 2017. *ECF No. 99.* In their proposed Third Amended Complaint, Plaintiffs sought to add claims under ERISA related to prohibited transactions and failure to comply with a document governing the Plan. *See ECF No. 114, at 3-8; ECF No. 115, at PL-MTA-APP. 97-101, 109-115.* Defendants opposed Plaintiffs' motion for leave to amend on substantive and procedural grounds, arguing that Plaintiffs had exhibited undue delay and that the proposed amendment was futile because the transactions were exempt.

7

*See ECF Nos. 109, 116.*  Plaintiffs' motion to amend remained pending at the time of the Parties'

Settlement.

### E.     Plaintiffs' Motion for Class Certification

Shortly after Plaintiffs filed their motion to amend and the Court issued its Order on the

American Airlines' Defendants' motion to dismiss (both of which happened on March 31, 2017),

Plaintiffs moved for class certification on April 3, 2017. *See ECF Nos. 102-104.* In their motion,

Plaintiffs requested that the Court certify a class of Plan participants and beneficiaries whose

Plan accounts included an investment in American Beacon Funds during the relevant time

(between April 15, 2010 and October 30, 2015).[7] *ECF No. 102.*  Plaintiffs did not move for a

broader class at that time because the Court had dismissed their claims relating to other funds in

the Plan (i.e., Plaintiffs' claim that it was imprudent to include mutual funds in general, as

opposed to collective trusts or separate accounts). *See ECF No. 100, at 10.* If the parties had not

reached a Settlement, Defendants would have opposed class certification. *Richter Decl. ¶ 6.*

### F.     Mediation & Settlement

In its operative Second Scheduling Order, the Court ordered the parties to mediate on or

before May 2, 2017. *ECF No. 66 ¶ 5.* The parties jointly selected Martin F. Scheinman to serve

as the mediator. *Richter Decl. ¶ 18, PL-PA-APP. 8.* Mr. Scheinman is an experienced and well-

respected mediator, who has successfully resolved numerous ERISA cases and other actions. *Id.

& Ex. 2, PL-PA-APP. 8, 102-08.*

In advance of the mediation, Plaintiffs and Defendants each submitted written mediation

statements. *Id. ¶ 19, PL-PA-APP. 8.* The Parties then engaged in a full-day, in-person mediation

with Mr. Scheinman on May 1, 2017, in New York. *Id.* Each named Plaintiff traveled to New

---

[7] Plaintiffs' pleadings prior to the Court's Order on the American Airlines Defendants' motion to dismiss alleged claims on behalf of a broader class, consisting of all Plan participants. *ECF No. 1 ¶ 90; ECF No. 34 ¶ 109; ECF No. 57 ¶ 137.*

York and participated in the mediation, along with four attorneys from Nichols Kaster, PLLP. *Id., ¶ 20, PL-PA-APP. 9*; *Main Decl. ¶ 2, PL-PA-APP. 175; Schmidt Decl. ¶ 2, PL-PA-APP. 178; Grentz Decl. ¶ 2, PL-PA-APP. 181*. Defendants were represented at the mediation by corporate representatives, outside legal counsel, and insurance company representatives. *ECF No. 121*. At the conclusion of the mediation, the Parties did not reach an agreement. *Richter Decl. ¶ 21, PL-PA-APP. 9*. However, Mr. Scheinman made a mediator's proposal that the case be settled for $22 million. *Id.* He gave the parties three days to consider this proposal, and after three days, each party accepted the $22 million settlement. *Id.*

The parties notified the Court that they had reached a settlement-in-principle on May 4, 2017, and the Court continued all deadlines pending settlement approval. *ECF Nos. 121-122.* The parties subsequently negotiated the comprehensive Settlement Agreement that is the subject of the present motion. *Id.*

## II.   OVERVIEW OF THE SETTLEMENT TERMS

### A.   Proposed Settlement Class

The Settlement Agreement calls for certification of a Settlement Class defined as:

> All persons who participated in the Plan whose Plan account included an investment in one or more of the Disputed Investments at any time during the Class Period, including any Beneficiary of a deceased person who participated in the Plan at any time during the Class Period, and/or Alternate Payees, in the case of a person subject to a Qualified Domestic Relations Order who participated in the Plan at any time during the Class Period.

*Settlement Agreement ¶ 2.51, PL-PA-APP. 27.* The "Class Period" is the period from April 15, 2010 to October 30, 2015. *Id. ¶ 2.16, PL-PA-APP. 23.* The "Disputed Investments" include the American Beacon Funds and other mutual funds offered in the Plan's investment lineup during

the Class Period (the "Non-American Beacon Mutual Funds").[8] *Id. ¶ 2.25, PL-PA-APP. 24*. There are approximately 103,000 Settlement Class Members. *Richter Decl. ¶ 3, PL-PA-APP. 2.*

## B.    Monetary Relief

Under the Settlement, the American Airlines Defendants and American Beacon will collectively contribute a gross settlement amount of $22 million to a common settlement fund (the "Qualified Settlement Fund"). *Settlement Agreement ¶ 5.4, PL-PA-APP. 34.* Following any deductions for Court-approved (a) attorneys' fees and costs; (b) class representative service awards; and (c) administrative expenses, the Net Settlement Fund will be distributed to the Settlement Class. *Id. ¶¶ 2.38, 6.1, PL-PA-APP. 25, 35.*

Payments to Class Members will be made according to the following Plan of Allocation: First, a *Settlement Allocation Score* will be assigned to each Class Member for each quarter during the Class Period based on the Class Member's quarter-ending account balance invested in the Disputed Investments, adjusted such that each dollar invested in American Beacon Funds counts for ten points and each dollar invested in Non-American Beacon Mutual Funds counts for one point. *Id. ¶ 6.4.1, PL-PA-APP. 36.*[9] Each Class Member will then receive a pro rata share of the Net Settlement Fund based on his or her *Average Settlement Allocation Score* compared to the sum of the *Average Settlement Allocation Scores* for all eligible Class Members. *Id. ¶ 6.4.2,*

---

[8] The Settlement provides relief for claims relating to American Beacon Funds that survived the American Airlines Defendants' motion to dismiss, as well as for claims relating to mutual fund expenses generally that were dismissed but potentially would have been the subject of an appeal. *See infra* at II.B. The provision of relief to a larger class than defined in Plaintiffs' class certification motion accords with the relief sought in Plaintiffs' pleadings, *see supra* at n. 7, and represents a fair compromise of all claims asserted in the action. *See In re Deepwater Horizon*, 732 F.3d 326, 342 (5th Cir. 2013) ("Class settlements certainly can encompass unmeritorious claims, because such claims, successful or not, are based on existing substantive rights").

[9] The difference in these point allocations reflects the fact that the claims relating to the American Beacon Funds were not dismissed, whereas the claims relating to the Non-American Beacon Funds were dismissed and could only have been revived on appeal.

*PL-PA-APP. 37.* In other words, Class Members will receive a share of the Net Settlement Fund proportionate to their weighted level of investment in the Disputed Investments relative to all eligible Class Members.

Current Participants will have their Plan accounts automatically credited with their share of the Settlement Fund. *Id. ¶ 6.5, PL-PA-APP. 37-39.* Former Participants will be required to submit a claim form, which allows them to elect to have their distribution rolled over into an individual retirement account or other eligible employer plan, or to receive a direct payment by check. *Id. ¶ 6.6, PL-PA-APP. 39-40.*[10]

### C.    Prospective Relief

Defendants have removed the American Beacon Funds from the Plan and implemented a low-cost investment lineup consisting of separate accounts and collective trusts. *ECF No. 57 ¶¶ 88, 132.* Accordingly, prospective relief is not necessary as part of the Settlement because Plaintiffs' claims already have been addressed going forward.

### D.    Review by Independent Fiduciary

As required under ERISA, the American Airlines Defendants will retain an Independent Fiduciary to review the Settlement on behalf of the Plan. *Settlement Agreement ¶ 3.1.1*; *see also* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830 ("PTE 2003-39"). The Parties will provide the Independent Fiduciary with sufficient information to support the Independent Fiduciary's review and evaluation. *Settlement Agreement ¶ 3.1.4.* The Independent Fiduciary will issue its report at least 30 days prior to the Fairness Hearing, so the Court may consider the report in determining whether to grant final approval of the Settlement. *Id. ¶ 3.1.2, PL-PA-APP. 28.*

---

[10] The Claim Form also allows the Settlement Administrator to verify the addresses of Class Members who are sent checks.

### E.      Release of Claims

In exchange for the relief provided by the Settlement, the Settlement Class will release

Defendants and affiliated persons and entities from all claims:

a.   That arise out of or are related to the conduct or omissions alleged in the Complaint,
First Amended Complaint, Second Amended Complaint, or proposed third Amended
Complaint;

b.   That relate to: (1) the selection, oversight, retention, monitoring or performance of the
American Beacon Funds offered in the Plan (including but not limited to any claim
that such selection, monitoring or retention constituted a prohibited transaction under
ERISA or violation of fiduciary duties imposed under ERISA), (2) fees, costs, or
expenses for the American Beacon Funds, (3) disclosures of or failures to disclose
information regarding the American Beacon Funds in the Plan;

c.   That relate to the selection or retention of mutual funds, as opposed to possibly lower-
cost investment vehicles, such as separate accounts or collective trusts, as investment
options for the Plan;

d.   That would be barred by *res judicata* based on entry by the Court of the Final
Approval Order;

e.   That relate to the direction to calculate, the calculation of, and/or the method or
manner of allocation of the Net Settlement Fund pursuant to the Plan of Allocation; or

f.   That relate to the approval by the Independent Fiduciary of the Settlement
Agreement, unless brought against the Independent Fiduciary alone.

*See Settlement Agreement ¶¶ 2.47, 8.1, PL-PA-APP. 26-27, 41.*[11]

### F.      Class Notice and Settlement Administration

Class Members will be sent a direct notice of the settlement ("Settlement Notice") via

U.S. Mail. *Settlement Agreement ¶¶ 2.53, 3.3.1, & Exs. 3-4.* The Settlement Notice sent to

Former Participants also will include a Claim Form enabling them to make the elections

described above. *Settlement Agreement ¶ 3.3.2 & Ex. 1.*

---

[11] The released claims do not include claims relating to the American Airlines Credit Union
Demand Deposit Fund, as asserted in *Ortiz v. American Airlines, Inc. et al.*, No. 4:16-cv-00151-
A (N.D. Tex.).  *See Settlement Agreement, ¶ 2.47, PL-PA-APP. 27.*

The Settlement Notices provide information to the Settlement Class regarding, among other things: (1) the nature of the claims; (2) the scope of the Settlement Class; (3) the terms of the settlement; (4) Settlement Class Members' right to object to the settlement and the deadline for doing so; (5) the class-wide release; (6) the identity of Class Counsel and the amount of compensation they will seek in connection with the Settlement; (7) the date, time, and location of the final approval hearing; (8) Settlement Class Members' right to appear at the final approval hearing; and (9) the process for submitting claims (Former Participants only). *Settlement Agreement ¶ 2.53 & Exs. 3-4, PL-PA-APP. 27-28, 70-90.*

To the extent that Class Members would like more information about the Settlement, the Settlement Administrator will establish a Settlement Website on which it will post several documents (or links to documents) relating to the case, including the various Complaints, the Settlement Agreement and exhibits thereto, the Settlement Notices, the Former Participant Claim Form, Class Counsel's Motion for Attorneys' Fees, Costs, and Administrative Expenses (when filed), the Class Representatives' Motion for Service Awards (when filed), any Court orders related to the Settlement, and any amendments or revisions to these documents. *Settlement Agreement ¶ 11.1, PL-PA-APP. 46.* In addition, the Settlement Administrator will establish a toll-free telephone line that enables callers to receive recorded information relating to the Settlement and leave a message if they have any questions. *Id. ¶ 11.2, PL-PA-APP. 46.*

### G.    Attorneys' Fees and Expenses

The Settlement Agreement provides that Class Counsel will file a motion for attorneys' fees, costs, and administrative expenses at least 30 days before the deadline for objections to the proposed Settlement. *Settlement Agreement ¶¶ 7.1–7.2, PL-PA-APP. 41.* Under the Settlement, Class Counsel will limit their request for attorneys' fees to no more than thirty percent (30%) of

13

the Gross Settlement Fund, plus reasonable litigation expenses and the Administrative Expenses of the Settlement. *Id. ¶ 7.1 & Exs. 3-4, PL-PA-APP. 41, 73, 81*. In addition, the Settlement Agreement provides that service awards of up to $10,000 may be sought for the Class Representatives, subject to Court approval, to compensate them for the time, effort, and risks they assumed in connection with this action.[12] *Id. ¶ 7.3, PL-PA-APP. 41*. The Settlement Agreement is not contingent on Court approval of any of fees, expenses, or service awards that may be requested. *Id. ¶ 10.3, PL-PA-APP. 45*.

## ARGUMENT

Federal courts favor the voluntary resolution of litigation through settlement, particularly in class actions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement"). The "gravamen of an approvable proposed settlement is that it be fair, adequate, and reasonable and is not the product of collusion between the parties." *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (internal quotation marks omitted).

At the preliminary approval stage, the court is not required to issue definitive findings regarding the fairness of the settlement, and need only make an initial determination that the proposed settlement is within the range of what may be found to be fair, adequate and reasonable, such that notice should be sent to the class. *See* Manual for Complex Litigation (Fourth) § 21.632 (2004); *accord*, *Glover v. Woodbolt Distribution, Ltd.*, No. CIV.A.H-12-2191, 2012 WL 5456361, at *1 (S.D. Tex. Nov. 7, 2012) ("[T]he settlement is within the range of possible final   judicial approval sufficient   to   warrant   sending   notice   to

---

[12] *See Purdie v. Ace Cash Express, Inc.*, No. CIV.A. 301CV1754L, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) ("Courts in this circuit have recognized and approved incentive awards for class representatives.")

14

settlement class members."); *In re OCA, Inc. Securities and Derivative Litig.*, No. CIV A 05-2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008) ("As this motion is for preliminary approval of a class action settlement, the standards are not as stringent as those applied to a motion for final approval").

## I.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

The Fifth Circuit has laid out six factors to be considered when determining whether to approve a settlement. *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). These factors are: (1) whether there is evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives and absent class members. *Id.* "When considering these factors, the court should keep in mind the strong presumption in favor of finding a settlement fair." *Purdie*, 2003 WL 22976611, at *4. "[T]he court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties." *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). Here, all six factors favor approval of the Settlement.

### A.   The Settlement Was Obtained Through Arm's-Length Negotiations

As discussed above, the Settlement was obtained (a) pursuant to Court-ordered mediation; (b) with the assistance of an experienced neutral, Martin F. Scheinman; (c) after consideration of the mediator's proposal over several days. *See supra* at 8-9. At all times, the negotiations were conducted at arm's length. *Richter Decl. ¶ 21, PL-PA-APP. 8-9.* Accordingly, the first factor strongly weighs in favor of approval of the Settlement, as there is no evidence of any fraud or collusion. *See Reed*, 703 F.2d at 172; *Billitteri v. Sec. Am., Inc.*, No. 3:09-CV-

15

01568-F, 2011 WL 3586217, at *10 (N.D. Tex. Aug. 4, 2011) ("As for the first factor, there is no evidence that the settlement was obtained by fraud or collusion. On the contrary, this settlement was diligently negotiated after a long and hard-fought process that culminated in ultimately successful mediation[.]").

### B.     The Litigation Was Complex, and Would Have Been Costly and Lengthy

The complexity of this ERISA class action also favors approval of the Settlement. *See Mertens v. Hewitt Associates*, 508 U.S. 248, 262 (1993) (ERISA is "an enormously complex and detailed statute"); *Cotton*, 559 F.2d at 1331 ("[C]lass action suits have a well deserved reputation as being most complex. … [S]ettlements contribute greatly to the efficient utilization of our scarce judicial resources[.]").[13] Had the Parties rejected the mediator's proposal, the Parties faced significant further discovery, additional motion practice (including summary judgment motions), and a potentially lengthy trial involving multiple Defendants, up to eight experts, and a very large class. This would have involved a significant financial burden for the parties and a significant judicial burden for the Court. Moreover, after all this, it likely that any final decision in the case would have been appealed by the non-prevailing party or parties. *See Richter Decl. ¶ 10, PL-PA-APP. 4*; *accord*, *Tibble v. Edison Int'l*, 843 F.3d 1187, 1191 (9th Cir. 2016) (outlining appellate history of decade-long 401(k) investment fee case); *Tussey v. ABB, Inc.*, 850 F.3d 951, 962 (8th Cir. 2017) ("*Tussey II*") (vacating trial court judgment for the second time in 401(k) investment case in its eleventh year). Thus, one of the main benefits of the Settlement is that it provides immediate relief to Class Members, within approximately two years of commencement of the action, and avoids potentially years of delay with an uncertain outcome. *See Ayers v.*

---

[13] *Accord*, *In re WorldCom, Inc. ERISA Litig.*, No. 02 CIV. 4816 (DLC), 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (observing that ERISA fiduciary breach claims are "complex" and contain "inherent" risks in litigating them to their conclusion).

*Thompson*, 358 F.3d 356, 369 (5th Cir. 2004) ("The agreement also provides relief for the class sooner than continued litigation would.")

### C.     The Parties Obtained Sufficient Discovery to Negotiate the Settlement

Although the amount of litigation remaining was substantial, this is ***not*** a situation where a settlement was hastily negotiated at the outset of the case prior to discovery. The Parties mediated this action one month before the discovery deadline, on the eve of the mediation deadline. *See ECF No. 66.* The discovery undertaken at the time of Settlement included more than 100,000 pages of documents and nine depositions. *See Richter Decl. ¶¶ 12-17, PL-PA-APP. 5-8.* At this stage, the Parties "possess[ed] ample information with which to evaluate the merits of the competing positions." *Billitteri*, 2011 WL 3586217, at *11 (quoting *Ayers*, 358 F.3d at 369); *see also Cotton*, 559 F.2d at 1332 (noting that cases can be "over discovered" and "the lack of [a voluminous record] does not compel the conclusion that insufficient discovery was conducted."); *Newby*, 394 F.3d at 305 ("The scope of discovery to be conducted in each case rests within the sound discretion of the district court.").

### D.     The Settlement Class Faced Risks on the Merits

Although Plaintiffs believe there is strong legal and factual support for their claims, there is risk "inherent in taking any litigation to completion." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 849 (E.D. La. 2007) (internal quotation marks omitted). All claims relating to the Non-American Beacon Mutual Funds relied on a successful appeal. Claims relating to the American Beacon Funds that survived dismissal would have been decided on a full record, where, unlike at the pleadings stage, the Court could consider Defendants' "alternative explanation[s]" and "opinion[s] about what the proper inferences should be" from the facts. *See ECF No. 100, at 8, 10.*

17

In the event that Plaintiffs successfully established a breach of fiduciary duty, the Court still would have had to find that the breach caused a loss to the Plan. *See McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995) (claim faltered because "the plaintiffs failed to prove a loss *to the plan*") (emphasis in original); *cf. Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010) ("[T]he difficulty of proving causation … is real") (approving mass tort class settlement due in part to challenges to proving causation). This risk is illustrated here by *Brotherston v. Putnam Invs., LLC*, 1:15-cv-13825 (D. Mass.), another ERISA action relating to the inclusion and retention of proprietary mutual funds in an employer-sponsored retirement plan. In *Putnam*, the district court found that the plaintiffs "failed to establish a prima facie case of loss" at trial; thus, despite a persuasive showing that the fiduciaries were "no paragon of diligence," the court entered judgment in favor of the defendants in the middle of trial. *See Putnam*, *Dkt. No. 202, at 34* (Findings of Fact, Rulings of Law, and Order dated June 19, 2017).[14] Although it is anticipated that the adverse ruling in *Putnam* will be appealed, it shows that the risks in these types of cases are anything but hypothetical.

### E. The Monetary Relief Compares Well to Potential Damages and Other Settlements

The benefits of compromise outweigh the risks of pursuing a potentially greater, but uncertain, recovery. *See Reed*, 703 F.2d at 175 ("[U]ncertainty is a catalyst of settlement."); *Cotton*, 559 F.2d at 1330 ("The trial court should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of

---

[14] The undersigned counsel and other attorneys from Nichols Kaster, PLLP represented the *Putnam* plaintiffs. The adverse trial order was entered after this action was settled, but exemplifies the risks of ERISA litigation involving 401(k) plans. *See Richter Decl. ¶ 9, PL-PA-APP. 4.*

highest hopes.") (internal quotation marks omitted). The $22 million Gross Settlement Amount equals more than 62% of American Beacon's estimated revenues associated with American Beacon Funds during the Class Period, and almost 100% of the difference between the expenses of the American Beacon Funds and their 2015 replacements. *See Richter Decl. ¶ 5, PL-PA-APP. 2-3*. Of course, Plaintiffs claimed additional losses associated with Non-American Beacon Mutual Funds, but those claims already had been dismissed, rendering their value negligible.

Although other methodologies might have yielded even greater damages estimates, it was reasonable and prudent to accept the substantial sum that was offered by Defendants (and proposed by the mediator) instead of chasing a proverbial "pie in the sky." Damages calculations relating to 401(k) investment offerings are the subject of significant uncertainty. *See Tussey v. ABB, Inc.*, 746 F.3d 327, 338 (8th Cir. 2014) (instructing district court to "reevaluate its method of calculating the damage award, if any, for the participants' investment selection … claims"); *Tussey II*, 850 F.3d at 962 (remanding a second time, finding that the district court still did not adequately consider "other ways of measuring the plans' losses"). As to costs, Defendants likely would have cited authority for the proposition that plan fiduciaries are not required to "scour the market" for the cheapest possible funds. *See Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009). Moreover, any performance-based comparisons likely would have been attacked on grounds of purported "hindsight bias." *See American Beacon's Brief in Support of Motion to Dismiss (ECF No. 75) at 17.*

Under these circumstances, accepting the substantial Gross Settlement Amount, in lieu of the difficult path toward "highest hopes", *see Cotton*, 559 F.2d at 1330, is fair and reasonable for

the Settlement Class.[15] When compared to other ERISA class action settlements in proprietary fund cases, the $22 settlement amount that was negotiated in this case compares favorably. *See Richter Decl. ¶ 7, PL-PA-APP. 3.* Indeed, the recovery percentage far exceeds that in the typical class action case. *See Stott v. Capital Fin. Services, Inc.*, 277 F.R.D. 316, 345, n. 19 (N.D. Tex. 2011) (approving class settlement "estimated at about 2 to 3 percent of the each individual class member's total losses" based on the "risks involved in the litigation"); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (recovery of 9 percent was reasonable); *In re Newbridge Networks Sec. Litig.*, No. CIV.A. 94-1678-LFO, 1998 WL 765724, *2 (D.D.C. Oct. 23, 1998) ("[A]n agreement that secures roughly 6 to 12 percent of a potential recovery ... seems to be within the targeted range of reasonableness"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

**F.    The Class Representatives and Class Counsel Believe the Settlement Is Fair**

Finally, "the value of the assessment of able counsel negotiating at arm's length cannot be gainsaid." *Reed*, 703 F.2d at 175. If competent counsel determines that a settlement is in the best interest of a class, "the attorney's views must be accorded great weight." *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1216 (5th Cir. 1978). Plaintiffs' counsel in this case are experienced in ERISA 401(k) plan litigation, and have significant additional class action litigation experience as well. *See Richter Decl. ¶¶ 23-40, Exs. 3-4, PL-PA-APP. 9-15, 109-49.* Thus, Class Counsel's opinion that the Settlement is fair, reasonable, and adequate—along with approval of each Class Representative—weighs strongly in favor of granting preliminary

---

[15] *See Purdie*, 2003 WL 22976611, at *7 (approving class settlement where class members received "considerably less" than if they would have succeeded on all claims, in light of the "risks and uncertainty they would face if the case were to proceed to trial").

approval of the Settlement. *See Richter Decl. ¶ 11, PL-PA-APP. 4-5; Main Decl. ¶¶ 2-4, PL-APP. 175-76; Schmidt Decl. ¶¶ 2-4, PL-PA-APP. 178-79; Grentz Decl. ¶¶ 2-4, PL-PA-APP. 181-82*.

## II.   THE CLASS NOTICE PLAN IS REASONABLE AND SHOULD BE APPROVED

In addition to reviewing the substance of the Parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice proposed here.

The Settlement Agreement provides that the Settlement Administrator will provide direct notice of the Settlement to Settlement Class Members via first-class mail. *Settlement Agreement ¶¶ 2.53, 3.3.1, PL-PA-APP. 27-28, 30-31*. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). The content of the Settlement Notices is also reasonable. *See supra* at 13. Among other things, the Notices "present a fair recital of the subject matter and of the proposed terms and … give the class an opportunity to be heard." *Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426, 429–30 (5th Cir. 1977). To the extent that Settlement Class Members have any questions, they may obtain additional information through the settlement support line or the settlement website. *See supra* at 13. This notice program is more than sufficient to meet the requirements of Rule 23 and Due Process, and should be approved. *See In re 2014 Radioshack Erisa Litig.*, No. 4:14-CV-00959-O, 2016 WL 6561597, at *3 (N.D. Tex. Jan. 25, 2016) (O'Connor, J.) (approving similar class notice plan).[16]

---

[16] Dissemination of the Settlement Notices and other settlement administration services will be handled by Analytics Consulting, LLC ("Analytics"), a seasoned settlement administrator that has experience administering other ERISA 401(k) settlements. *See Richter Decl., ¶ 42, PL-PA-*

### III.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Finally, the Court should certify the Settlement Class for settlement purposes under Rule 23.[17] To be certified, the proposed class must satisfy each of the requirements of Rule 23(a) and meet one of the prerequisites of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-46 (2011). In the context of settlement, however, the court need not inquire whether a trial of the action would be manageable on a class-wide basis because "the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231 (1997). Thus, "[t]he requirements for class certification are more readily satisfied in the settlement context than when a class has been proposed for the actual conduct of the litigation." *White v. Nat'l Football League*, 822 F. Supp. 1389, 1402 (D. Minn. 1993) (citations omitted); *see also Horton v. Metropolitan Life Ins. Co.*, 1994 U.S. Dist. LEXIS 21395, at *15 (M.D. Fla. Oct. 25, 1994).

#### A.   The Proposed Settlement Class Satisfies Rule 23(a)

Rule 23(a) sets forth four requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Amchem Prods., Inc.,* 117 S. Ct. at 2245; Fed. R. Civ. P. 23(a). Each requirement is satisfied here.

**Numerosity**: There are approximately 103,000 members of the Settlement Class. *See supra* at 10. This far exceeds the 100 to 150 person range "that generally satisfies the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).

**Commonality:** "In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 452 (S.D.N.Y. 2004).

---

*APP. 16-17.* Analytics won the project after a competitive bidding process involving four separate administration firms. *Id.* The total cost to administer the Settlement (including postage) is estimated to be approximately $141,000, which comes to $1.37 per Class Member. *Id.*

[17] Plaintiffs incorporate by reference their prior arguments in support of class certification, *see ECF No. 101-36*, modified here to encompass the Settlement Class.

Here, Defendants' selection and retention of the Disputed Investments in the Plan affected all Class Members, generating a common set of questions satisfying the commonality requirement. *See, e.g., Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 815CV1614JLSJCGX, 2017 WL 2655678, at *4 (C.D. Cal. June 15, 2017) (finding commonality satisfied in action challenging selection and retention of proprietary investments in 401(k) plan); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 572 (D. Minn. 2014) (same); *accord, In re Enron Corp.*, No. CIV.A. H-01-3913, 2006 WL 1662596, at *10 (S.D. Tex. June 7, 2006) ("Here shared issues of law and fact satisfy[] the commonality requirement, … includ[ing] whether Defendants were fiduciaries within the meaning of ERISA; whether ERISA was violated by the ERISA Defendants' alleged acts and omissions; whether Defendants breached fiduciary duties owed to the class by failing to act prudently and solely in the interest of the class and the plans[.]").

**Typicality:** The typicality requirement "tend[s] to merge" with the commonality requirement. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).[18] Here, the named Plaintiffs' claims are typical of the Class because "each of the claims arises from the same event or course of conduct, and each is based on the same legal theory, i.e., breach of fiduciary duty under ERISA." *In re Enron Corp.*, 2006 WL 1662596, at *10. Indeed, "'given the representative nature of suit pursuant to ERISA 502(a)(2),' each plan participant/class member's claims are 'necessarily typical of those of the rest of the class.'" *Id.* (quoting *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D. Va. 2006)); *see also Urakhchin*, 2017 WL 2655678, at *5; *Ameriprise*, 304 F.R.D. at 573.

---

[18] "[T]he critical inquiry [for purposes of typicality] is whether the class representative's claims have the same essential characteristics of those of the putative class." *Stott*, 277 F.R.D. at 324.

**Adequacy**: The adequacy requirement is also satisfied because Plaintiffs have been actively involved in this lawsuit and have no conflicts with the Settlement Class,[19] and Plaintiffs' counsel have zealously litigated this action and have extensive experience litigating other class action cases, including ERISA class actions.[20]

### B.     The Proposed Class Satisfies Rule 23(b)(1)

In addition to meeting the requirements of Rule 23(a), the proposed class also satisfies Rule 23(b)(1). Under Rule 23(b)(1), a class may be certified if prosecution of separate actions by individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.] Fed. R. Civ. P. 23(b)(1).[21] The Settlement Class plainly satisfies this Rule in light of the claims alleged, which are brought on behalf of the Plan, and would affect all Participants in the Plan who held Disputed Investments during the Class Period. *See Ameriprise*, 304 F.R.D. at 576-78 (certifying class under both prongs (A) and (B)). Indeed, "ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *In re Enron Corp.*, 2006 WL 1662596, at *14 (quoting *DiFelice*, 235 F.R.D. at 80); *In re 2014 Radioshack ERISA Litig.*, 2016 WL 6561597, at

---

[19] *See Main Decl. ¶¶ 1-9, PL-PA-APP. 175-77, Schmidt Decl. ¶¶ 1-9, PL-PA-APP. 178-80; Grentz Decl. ¶¶ 1-9, PL-PA-APP. 181-83.*

[20] *See Richter Decl. ¶¶ 23-41 & Ex. 3-4, PL-PA-APP. 9-16, 109-49.*

[21] Plaintiffs only address class certification under Rule 23(b)(1) because it is clear that certification is proper under Rule 23(b)(1), and Rule 23(b)(3) is intended to address "situations in which class action treatment is not as clearly called for as it is in Rule 23(b)(1) …" *Amchem Prods.*, 117 S. Ct. at 2245.

*1 (certifying ERISA settlement class under Rule 23(b)(1)).[22]

## CONCLUSION

For the foregoing reasons, the Court should enter an order: ((1) preliminarily approving the parties' Class Action Settlement Agreement; (2) approving the proposed Settlement Notices and authorizing distribution of the Notices; (3) certifying the proposed Settlement Class; (4) designating Plaintiffs as Class Representatives; (5) designating Plaintiffs' counsel as Class Counsel; (6) scheduling a final approval hearing; and (7) granting such other relief as set forth in Plaintiffs' proposed Preliminary Approval Order submitted herewith.

Respectfully Submitted,

Dated: July 7, 2017                    **NICHOLS KASTER, PLLP**

*/s/ Kai H. Richter*
Kai H. Richter, MN Bar No. 0296545*
Carl F. Engstrom, MN Bar No. 0396298*
Paul Lukas, MN Bar No. 22084X*
Brandon McDonough, MN Bar 0393259*
Brock J. Specht, MN Bar. No. 0388343*
     * admitted *pro hac vice*
4600 IDS Center, 80 S 8th Street
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878
krichter@nka.com
cengstrom@nka.com
lukas@nka.com
bmcdonough@nka.com
bspecht@nka.com

---

[22] *See also In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 604 (3d Cir. 2009) ("In light of the derivative nature of ERISA § 502(a)(2) claims, breach of fiduciary duty claims brought under § 502(a)(2) are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class, as numerous courts have held.") (citing cases); Fed. R. Civ. P. 23, Adv. Cmte. Note to Subd. (b)(1) Clause (B) (noting that (b)(1) certification is appropriate in an action that "charges a breach of trust by [a] … fiduciary similarly affecting the members of a large class of … beneficiaries").

25

**KENDALL LAW GROUP, PLLC**

Joe Kendall
Texas Bar No. 11260700
Jody Rudman
Texas Bar No. 00797356
3232 McKinney Avenue, Suite 700
Dallas, Texas  75204
214-744-3000 / 214-744-3015 (Facsimile)
jkendall@kendalllawgroup.com
jrudman@kendalllawgroup.com

ATTORNEYS FOR PLAINTIFFS